# The Attorney General on the relation of The Muskegon Booming Company v. The Evart Booming Company.

*Equity jurisprudence: Information: Public grievance.*   An information in equity at the instance of the attorney general must necessarily be based upon a public grievance.

*Purprestures: Nuisances.*   A purpresture may be defined as an enclosure by a private party of a part of that which belongs to and ought to be open and free to the enjoyment of the public at large; but a purpresture is not necessarily a public nuisance.   A public nuisance must be something which subjects the public to some degree of inconvenience or annoyance; but a purpresture may exist without putting the public to any inconvenience whatever.

*Navigable streams: Soil under the stream: Riparian owner.*   The public has no proprietorship in the soil under small streams which are navigable only in a modified sense for floatage of logs and lumber, as it has under navigable waters at the common law, where the tide ebbs and flows; but the riparian owner presumably owns to the center of the stream.

*Highways: Floatage.*   There is a plain distinction between the highway by land, with its definite limits to which the public right extends whether the whole is used or not, and the highway for floatage in small streams, where the public rights have no definite limitations of space except as practicability for use and the occasion for use may give variable limits as the seasons and the needs of business and traffic may change.

ATTORNEY GENERAL *v.* EVART BOOMING CO.

*Bed of streams: Private appropriation: Purpresture: Nuisance.* The private appropriation of a part of the bed of a small stream not navigable except for floatage, is neither a purpresture nor a nuisance, nor a public grievance of any sort, unless the public use is thereby unreasonably abridged or inconvenienced.

*Booming companies: Bed of stream: Reasonable appropriation: Nuisance.* Some appropriation of the bed of the stream being essential to the reasonable operation of booming companies, the public, in authorizing by general law the organization of such companies and regulating their operation, must be deemed to have waived its right to complain of an appropriation which is not unreasonable; nothing can be a nuisance which the sovereign authority allows, especially when the allowance is on public grounds, and made to facilitate the use of that which is common to all.

*Competing booming companies: Inconvenience: Public nuisance.* The question of lawfulness in the action of a booming company in enclosing part of the stream for its own purposes, is one depending on the particular facts: whether the general public desiring to avail themselves of the navigable rights are more inconvenienced than accommodated thereby; and inconvenience to another booming company occupying the same stream cannot be made the test of whether such action constitutes a public nuisance.

*Common use of a common right: Reasonable use: Incidental inconvenience.* Any injury resulting to one making use of a common right from the reasonable and prudent use by another of the like right must be considered incidental to and inseparable from the exercise of a general right, and is not the subject of either public or private complaint.

*Reckless or careless exercise of general public right: Private injury: State interest.* A careless or reckless exercise by one party of a public and general right, to the prejudice of another desiring to make use of the same right, and not affecting the general public, is a private injury and not a public wrong, and will not sustain an information on behalf of the state.

*Equity pleading and practice: Information: Bill: Complainant: Relator.* A pleading filed as an information, though having many of the features of a bill, cannot be sustained as a bill when dismissed as an information; the attorney general, failing by his information to make out a case on behalf of the public, cannot bring the relator forward as orator at the hearing; and there can be no bill of complaint without a complainant.

*Heard June 14.    Decided October 10.*

Appeal in Chancery from Osceola Circuit.

*Andrew J. Smith,* Attorney General, and *Hughes, O'Brien & Smiley,* for informant and complainant, argued that the jurisdiction of courts of equity in cases of purpresture and nuisance, though not very frequently exercised, is undisputed: *Waterman's Eden on Inj., ch. 11, p. 259; Attorney General v. Cohoes, 6 Paige, 133; High on Inj., § 519; 2 Story Eq., § 924; Angell on W. C., § 565;*

*Attorney General v. Forbes, 2 M. & C., 123;* that in cases of public nuisances an information will lie in equity to stop the mischief and restrain the continuance of it: *Mayor, etc., v. Balt., 5 Ves., 129; Attorney General v. Nichol, 16 Ves., 342;* that the Muskegon river is a public highway: *Moore v. Sanborn, 2 Mich., 519; Lorman v. Benson, 8 Mich., 18; Thunder Bay River Booming Co. v. Speechly, 31 Mich., 336;* that at common law any encroachment upon a public stream was a purpresture, and an obstruction on a public river is a nuisance, and may be dealt with as such: *Weld v. Hornby, 7 East, 195; O'Fallon v. Daggot, 4 Mo., 343; Hunt v. Mayor, 3 Paige, 213; Mohawk Bridge Co. v. U. & S. R. R. Co., 6 Paige, 554;* that the right of the public in a highway extends to every part of it: *Rex v. Russell, 6 East, 527; Rex v. Morris, 1 B. & A., 441; Shaw v. Crawford, 10 Johns., 256; Hart v. Mayor, etc., 9 Wend., 571; Reg. v. Randall, 41 Eng. C. L., 272;* that in cases of public nuisances the suit should be by the attorney general, or at all events he should be a party to it, unless the individual injury is distinct from that which is done to the public at large, in which case alone have the persons injured a special right entitling them to recover: *Attorney General v. Johnson, 1 Wils. Ch., 87; Bains v. Baker, Amb., 158; Attorney General v. Cleaver, 18 Ves., 211; Spencer v. L. B. R. R. Co., 18 Sim., 103; Sampson v. Smith, Ib., 272; Attorney General v. May, 5 Cush., 336; People v. Vanderbilt, 28 N. Y., 396; S. C., 38 Barb., 282; Davis v. Mayor, 4 Kern., 526; People v. St. Louis, 5 Gilm., 351; 38 Cal., 564; Milhan v. Sharp, 17 Barb., 445; Clark v. Saybrook, 21 Conn., 313, and cases cited above;* see also *2 Lans., 396;* that when the relator has an interest in the matter his personal complaint may be joined with that of the government and the two together constitute an information and bill: *Story Eq. Pl., § 8, note 5;* that the statute authorizing the organization of boom companies

does not give them any right to destroy navigation, injure property or otherwise create any nuisance: *Comp. L. 1871,* § *2788; Grand Rapids Booming Co. v. Jarvis, 30 Mich., 308;* that the attorney general has authority to file a bill to restrain by injunction any corporation from assuming or exercising any franchise, liberty or privilege, or transacting any business not authorized by its charter: *Comp. L. 1871,* § *6560.*

*W. L. Webber,* for respondent, argued that the bill or information, whichever it may be found to be, does not state a case of equitable cognizance; that the attorney general has no authority to intervene in a case of this character; that the constitution *(Art. 8,* § *1)* provides for his election and that he shall perform such duties as may be prescribed by law, thereby excluding all duties not expressly prescribed, and the statutes define his duties: *Comp. L. 1871,* §§ *255-7,* ⸱*5718, and ch. 225;* but no where is authority given him, or the duty imposed on him, to file an information on a state of facts like those here set out; that where a suit in equity is instituted on behalf of the government or of those who partake of its prerogative or whose rights are under its peculiar protection, the matter of complaint is set out by way of information, and where no other interest is involved, the proceeding is purely by way of information: *Story Eq. Pl.,* § *8;* and as to the proper powers and duties of the relator and of the attorney general, see *26 Mich., 444;* that in this case there is no feature which justifies the interference of the attorney general: it is no where alleged that the respondent has constructed its booms without legal right, but the burden of the complaint is, that in the exercise of its legal rights, respondent does not use such diligence as it ought, and that the manner in which it uses its structure, legally erected for a legal purpose, is objectionable; and this is not a matter calling for the exercise of equity jurisdiction, but the

remedy is by *mandamus,* or if not of public interest, then by an action at law for damages.

The respondent has the same right to maintain its boom at Evart that the relator has to maintain its boom at the mouth of the river, both being organized under the same statute; and the state is not interested in the want of diligence charged upon respondent in the exercise of its franchises, nor in an accounting as to the number of dollars that will make good the damages which the relator has sustained; and it is indispensable that the pleading state a case within the proper jurisdiction of a court of equity: *Story Eq. Pl.,* § *10;* and failing of this, the error is fatal in every stage of the case, and cannot be waived or cured by consent.

The attorney general and the relator have no interest here in common; the former has no interest in the accounting, and the latter none in the exercise of the preventive powers of the court in behalf of the public; an information in equity in cases of purpresture is for the purpose of obtaining the preventive powers of the court by way of injunction, to afford a more speedy remedy than that by way of indictment, and the remedy by *mandamus* on behalf of the public, or of individuals whose rights are invaded, is a more speedy and effectual one than that by bill in equity.

It does not appear from the pleading that the relator has any interest beyond the running season of 1875; nor is it alleged that it contracted to run the logs of whose detention it complains at any specified time, and if it is to have compensation according to the labor bestowed, the damage from delays or increased expense is one that will fall, not on relator, but on the log owners, and it does not appear that they complain; nor does it appear that respondent has interposed any permanent obstruction to the stream, and a boom company cannot be operated without encroaching upon the stream somewhat, and the right given by statute to operate these companies must

be construed so as to have some value; where a large quantity of logs are floating down it is impossible to assort them and select out such as are to stop at the boom except by stopping the whole drive; and while this must necessarily to some extent delay the passage of logs down the stream, it is but an inconvenience incident to that mode of navigation, and gives no right of action so long as the stoppage is not unreasonable.

The bill alleges no injury to any person except the relator; it does not anywhere assert that any other person is interested in navigating said stream, or has sustained any injury.

If we are to judge of this instrument, not from its formal commencement, nor by the name endorsed upon it, we must call it a bill filed by the Muskegon Booming Company to enjoin the respondent from the exercise of any franchises whatever under the act above mentioned.

The prayer for an injunction in behalf of "your orator," if granted, would absolutely prevent the respondent from exercising any franchise whatever, and would make necessary the removal of all booms from the river. The question in fact is, whether the Muskegon Booming Company has an exclusive right to the navigation of the Muskegon river, or whether other people, who are interested at other points upon the river above the mouth, have not the same right that the relator exercises and claims for itself, and whether a court of equity will decree such exclusive right to the relator and enjoin all others from having any beneficial use of the navigation of said stream.

COOLEY, CH. J:

The pleading of the attorney general in this case is somewhat anomalous, and we deem it important to a proper presentation of our views that a very full statement of its substance should be given.

It begins by saying that, "Informing showeth unto your

honorable court, Andrew J. Smith, attorney general of the
state of Michigan, by and upon the relation of the Muske-
gon Booming Company," that it is the business of said
company to run, raft and boom logs in and upon the Mus-
kegon river, which is a stream navigable for running, raft-
ing, driving and floating logs, lumber and timber, and for
a part of the distance navigable for steamboats, in which
business it has been engaged for eight years or more, and is
engaged the present season, that is to say, the spring and
summer of 1875; that during the spring of the present
season said company took possession of the logs and drive
on said river, by and with the consent and at the request of
the owners of logs therein and thereon, and by and with
such consent has been running such logs; that there is a
large quantity of logs so taken possession of and driven, to-
wit: about two hundred million feet, and that by taking
possession thereof they have entered into contracts with the
owners to run, drive and raft the same to points below on
the river where they are to be manufactured;

That by law said company has a lien on the logs for the
payment for its services in so running, driving and rafting,
and also in booming the same, and that the owners of the
logs cut and placed them in the river for the purpose of
running and driving the same, or of having the said com-
pany run, drive and raft the same to the city of Muskegon
for manufacture into timber and lumber.

The information then proceeds to aver that "your ora-
tor" further informing shows that at a point in said Mus-
kegon river, about two miles above the village of Evart, the
said Evart Booming Company have made, erected and placed
in said river booms, sticks, piers and piles; that at a point
in said river about one mile below said village of Evart the
said Evart Booming Company have made, erected and placed
in said river dams and large numbers of sticks, piers and
piles; that the channel of said river at the point where said
booms are so made and erected is about the width of three
hundred feet; that the said Evart Booming Company have

filled up the channel of said river with logs, booms, piers, piles and timber from the aforesaid point in said river, about two miles above said village of Evart, where the lower end of said boom is, extending up the channel of said river about the distance of half a mile, leaving open for the said distance of the channel of said river a place or channel only about eighteen or twenty feet in width; that for the distance of about half a mile aforesaid along the channel of said river the said Evart Booming Company maintain their booms on each side of the center of said river; that they have standing in said booms large quantities of logs and timber nearly or quite covering the surface of the water of said river; that of the surface left uncovered there is a very narrow space, only about eighteen or twenty feet in width; that all the rest of the surface and channel of said river, except the said eighteen or twenty feet in width at or near the center of said stream, and between the booms of the said Evart Booming Company, is filled with logs and timber and entirely filled and obstructed; that at the head of the boom said Evart Booming Company have, during a great portion of the time, booms and boom sticks extended entirely across the channel of said river, filling and obstructing the said channel, hereinbefore mentioned as being eighteen or twenty feet wide, as well as the rest of the channel of said river, and closing it to navigation for logs, lumber, timber and all floatables;

That "your orator" shows that the operations aforesaid of the said Evart Booming Company, carried on and conducted in the manner in which they are carrying them on and conducting them, obstruct, hinder, impede and delay the navigation of said Muskegon river at the point where the said river passes through the village of Evart, and that the said Muskegon Booming Company, in running, rafting and driving logs aforesaid, are greatly hindered and delayed in the navigation of said river; that they are put to great trouble and large expense in running their logs by and through said village of Evart, and "your orator" alleges

that the said obstructions of navigation constitute a nuisance and a purpresture;

That about the 11th day of June, 1875, the said Muskegon Booming Company had in the drive in said river, at or near the said village of Evart, above the booms of said Evart Booming Company, about seventy-five million feet of saw-logs; that the said company was then engaged in driving said logs in and upon said river to the city of Muskegon; that the said Evart Booming Company stopped and detained the said logs by and above said booms and dams; that by their said operations in said river they caused the water in said river to set back and above the natural channel thereof, and to throw the said logs in charge of said Muskegon Booming Company back and upon the land above and beyond the natural channel of said Muskegon river; that they have held the said logs there, or large quantities of them, for a long period of time, to wit: for several days, and would not let them pass through said booms and dams, and that in consequence thereof the said logs were thrown back and out of the channel of said river, and the said Muskegon Booming Company was obliged and compelled to employ and keep at work large numbers of men to sack off and roll into said river and the waters thereof, the said logs and timbers so as aforesaid floated and set back upon the land by the operations of the said Evart Booming Company; and by means thereof the said Muskegon Booming Company sustained great and irreparable damage and injury.

The information then proceeds to set out with more particularity the injuries which the relator suffers from the wrongful acts of the respondent, and which it will suffer if those wrongful acts are persisted in, and to negative the pretenses under which the action of the respondent is attempted to be justified.

It avers that the Evart Booming Company have not the necessary and usual facilities at their booms, or at the head of their dams, for assorting the logs that float down the

said river, and that they are and have been negligent and unskillful in erecting and maintaining, and in acquiring and owning the necessary and usual facilities for booming and assorting logs in and upon said river at the village of Evart aforesaid; and the other booms and facilities for booming and assorting logs on said river are entirely inadequate for the wants and necessities of booming operations at said point, and they fall greatly short of the facilities and means that might be had in and upon said river by using reasonable diligence, skill and care in erecting booms and assorting places on said river.

"And further informing, your orator shows," that the said Evart Booming Company only works at the assorting places which they have at their booms on said river for ten or eleven hours during the twenty-four hours of the day, and that then they do not employ the necessary number of men to work with such expedition as the business of said river and the necessity of the occasion require; that the said stoppage, delay and detention by the said Evart Booming Company is entirely unreasonable and unnecessary, and without authority of law; that it occasions constantly recurring grievances to said Muskegon Booming Company and other persons navigating, and desiring to navigate said river, and that it is a public nuisance.

The pleading then avers' requests to the Evart Booming Company to desist from its unlawful acts, which it refuses to heed, and it prays that said last mentioned company "may be restrained and enjoined from in any way or manner obstructing the navigation of the Muskegon river at or near the village of Evart, and from hindering, delaying, stopping or interfering with the floating, running, rafting or driving of logs in the said Muskegon river, and from detaining at Evart, or at any other point in said river, the logs being run, rafted, floated or driven by the said Muskegon Booming Company, and from in any way hindering by their booms or otherwise the free navigation of said river by logs, timber and lumber; and that the said Evart Booming

Company may come to a fair accounting with the said Muskegon Booming Company respecting the damages already sustained and to be sustained by their acts already committed by the Muskegon Booming Company by reason of the said Evart Booming Company stopping, hindering, delaying, or interfering with the navigation of said Muskegon river for running, rafting, driving or floating logs therein, and interfering with, stopping and delaying the logs floated and being floated, rafted and run in said Muskegon river by the Muskegon Booming Company, or that the said complainant and the Muskegon Booming Company may have such other relief or such further relief in the premises as may be agreeable to equity and good conscience."

We have said that this pleading is anomalous. It is certainly not artistic in form, and reads as if it might originally have been prepared as a bill on behalf of the Muskegon Booming Company, and afterwards, by slight alterations, converted into an information. The words "your orator" are so employed that it is not clear at all times whether they refer to the informant or to the relator, and while logically we must refer them to the informant, because he is the person addressing the court, the sense would seem to indicate that the relator was the party intended. But all matters of mere form may be overlooked if the substance of a legal complaint appears; and it is to that question that we shall direct our attention.

An information at the instance of the attorney general must necessarily be based upon a public grievance. If one is shown here, the information may be sustained; if not, it must, as an information, be dismissed. · It is insisted that a public grievance is shown; that the acts which are complained of constitute a public nuisance and a purpresture, and that it has become the duty of the attorney general, acting on behalf of the state at large, to take proceedings for restraining persistence in this injurious conduct.

A purpresture may be defined as an enclosure by a private party of a part of that which belongs to and ought to be

open and free to the enjoyment of the public at large. The appropriation by an individual of a part of a public common may therefore be a purpresture, and as it would constitute an invasion of a public right, it would be proper that proceedings for its abatement should be taken on behalf of the state. An unauthorized enclosure of a part of a highway may also be a purpresture and a public wrong, whether the highway be one by land or by water.

It is, however, to be observed of a purpresture that it is not necessarily a public nuisance. A public nuisance must be something which subjects the public to some degree of inconvenience or annoyance; but a purpresture may exist without putting the public to any inconvenience whatever. Such might be the case where the part of a common highway is enclosed, provided the appropriation is confined to a part never made use of for purposes to which the highway is devoted. A highway usually includes within its limits more than is ever made use of for public purposes; but as it is set apart for public use provided there shall be occasion, the appropriation by an individual is unlawful, though it occasion no present inconvenience to any one, and it may be abated because the result of its being persisted in might be to obscure and possibly in the end to defeat the public right altogether, and thus preclude enjoyment by the public in case the use of that which was enclosed should ever be needed for highway purposes.

On the other hand, the appropriation of a part of that which belongs to the public may sometimes not be unlawful, not only because it may be made under circumstances raising an implication of assent on the part of the public authorities, but because it may be essential to the proper enjoyment of the public right. Such a case may be found in the extension of a wharf into navigable waters. Wharves are essential; and while the state may limit their construction to the line of navigability, this is seldom done except under very peculiar circumstances.

We shall assume in this case that the information makes

34 MICH.—60.

out a plain case of appropriation by the respondents of a part of the bed of the Muskegon river to their own purposes. The questions then are, *first*, whether the appropriation is of something which is common to the public; and if so, then, *second*, whether it is made in a manner or under circumstances which justify or excuse it. In considering these questions it is important that we bear in mind the sort of navigable water we are dealing with. Navigable waters at the common law are those where the tide ebbs and flows; under these the public have a proprietorship in the soil itself; and in various ways the sovereign authority may make use of this ownership for the benefit and protection of navigable rights as well as for other purposes. The Muskegon river, it need hardly be said, is not of this character, and the public have no rights whatever in the soil under it. Neither is it a navigable stream, at least at the point where the alleged purpresture exists, in the more popular sense of that term, for it is only a small stream whose value to the public consists in the use which can be made of it for the purpose of floating logs and lumber. The right of floatage is unquestionably a right which the state should guard and protect; but it is a serious mistake to assume that the private appropriation of a part of the bed of the river would necessarily be either a purpresture or a nuisance. The property taken in such a case is not public but private property, and the owner of the bank, who also presumably owns to the center of the stream, may maintain trespass or ejectment against the taker. If the owner make no complaint, the public can have neither right nor occasion for any, provided the navigable rights are not abridged. If they are, it is not very manifest how this can be a purpresture. The difference between the highway by land, with its definite limits to which the public right extends, whether the whole is used or not, and the highway for floatage in our small streams, where the public rights have no definite limitations of space except as practicability for use and the occasion for use may give variable limits, as the seasons and

the needs of business and traffic may change, is so plain that the difference between an appropriation in the two cases needs only to be mentioned. It requires neither argument nor illustration. The one is a public grievance of some sort; but the other is no public grievance of any sort, unless the public use is unreasonably abridged or inconvenienced.

But if the appropriation of a part of such a stream were presumptively a public injury, the public must be deemed to have waived its right to complain, so far as the appropriation was not unreasonable, when the law permitting the organization of booming companies, and regulating their operations, was enacted. This is so because some appropriation is essential to their operations. Nothing can be a nuisance which the sovereign authority allows, especially when the allowance is on public grounds, and made to facilitate the use of that which is common to all. The question of lawfulness in the action of a booming company in enclosing part of the stream for its own purposes, whether it is done by permanent structures or otherwise, must therefore necessarily be a question depending on the particular facts; it is a question of nuisance or no nuisance; in other words, it is a question whether the general public desiring to avail themselves of the navigable rights are or are not more inconvenienced than accommodated thereby. If they are not, the enclosure is not unlawful; if they are, it may be.

The information certainly makes out a case of inconvenience and injury to the relator, but it does not follow that a public nuisance is shown. It is perhaps impossible that two booming companies should make the same part of a stream the field for their respective operations without subjecting each other to more or less annoyance, impeding somewhat each other's operations and abridging each other's receipts. But like common carriers on the same route,— which in a certain sense they are,—they must put up with these inconveniences so far as they are not reasonably to be

avoided; they constitute no nuisance, and neither party conducting its business in a proper and prudent manner can be subject to either public or private complaint. Any injury under such management must be considered incidental to and inseparable from the exercise of a general right.

But if the respondent fails to keep within the limits of a just exercise of its rights, the case may still be one of purely individual injury. If one stops another in the street, but permits all others to pass along, there is private wrong, but no public wrong. The fact of its being committed in a public place does not make it public. We cannot read the information before us without being impressed that the complaint is of a private injury to this relator; of carelessness or recklessness in the exercise of a public and general right to its prejudice. Others are referred to as being inconvenienced, but the inconvenience to them appears to have reference to their transactions, actual, contemplated, or possible, with the relator, and to constitute a grievance on its behalf rather than on theirs. They may or may not care to complain, and until they do the attorney general may well leave them to deal with the case as they may desire or as they may be advised. As the case stands on the information the state at large can have no more interest in any individual grievance of this nature than in many others that are from day to day being called to our attention, and in which confessedly there is a public interest in no legal sense whatsoever.

It is insisted, however, on behalf of the relator that the pleading is both an information and a bill; and that though we conclude it should be dismissed as an information, it may still be sustained in the other character. But the fact is not as is claimed. There is no bill here; nothing but an information. It is undoubtedly informal, but we cannot treat that as both an information and a bill which on its face purports to be an information only. There can be no bill of complaint without a complainant; and the fact that the attorney general, appearing as the sole party addressing

the court, fails to make out a case on behalf of the public, cannot entitle him to bring the relator forward as orator at the hearing. When the information is dismissed there is nothing to support a decree in favor of any one. A reference to cases like *Attorney General v. Mayor of .Bristol, 3 Madd. Ch., 164; Attorney General v. Vivian, 1 Russ., 226; Attorney General v. Heelis, 2 Sim. & Stu., 67;* and *Attorney General v. Master, etc., of Catherine Hall, Jac., 381,* in which the pleading was treated as both an information and a bill, will make plain the difference between those cases and the present in that regard.

We agree with the circuit judge that no case was made for the intervention of the public authorities. The information was therefore properly dismissed. The decree will be affirmed, with costs against the relator.

The other Justices concurred.