## RUSSELL *v.* MAXWELL LAND GRANT COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 321.   Submitted April 29, 1895. — Decided May 20, 1895.

A survey made by the proper officers of the United States, and confirmed by the Land Department, is not open to challenge by any collateral attack in the courts.

ON May 19, 1888, the defendant in error, as plaintiff, commenced this action in the Circuit Court of the United States for the District of Colorado to recover the possession of a cer-

tain tract of land. After answer the case came on for final trial on October 10, 1890. The verdict and judgment were in favor of the plaintiff, and the defendants allege error.

The facts disclosed by the testimony are substantially these: On May 19, 1879, a patent was issued by the United States to Charles Beaubien and Guadalupe Miranda, their heirs and assigns, for a tract of land known as the Maxwell Land Grant. This patent recites that on January 11, 1841, the territorial governor of New Mexico (that being at the time a part of the Republic of Mexico) made a grant to Beaubien and Miranda of a tract of land with specified boundaries; that on June 21, 1860, Congress passed an act confirming such grant, with the boundaries therein specified; that on December 16, 1878, the Surveyor General of the United States for the Territory of New Mexico returned to the Land Department at Washington a survey officially made, giving in detail the boundaries as established by that survey; and in terms "grants the tract of land embraced and described in the foregoing survey." The land in controversy is within the limits of the survey, and thus within the terms of the patent. In 1871 the regular surveys of public lands in the southern part of Colorado were extended so as to include this land, which by those surveys was marked and described as the west half of the southeast quarter, and the northeast quarter of the southwest quarter, and the southwest quarter of the northeast quarter of section 20, township 33 south, range 68 west of sixth principal meridian. On April 6, 1874, Richard D. Russell, the ancestor of defendants, applied at the local land office to enter this tract under the homestead laws, and on September 5, 1876, proved up and received his final receipt therefor.

*Mr. Ira W. Buell, Mr. W. S. Harbert,* and *Mr. George R. Daley* for plaintiffs in error.

*Mr. Charles E. Gast* and *Mr. Frank Springer* for defendant in error.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

The Maxwell Land Grant is no stranger to this court. After the issue of the patent a bill was filed by the United States to set it aside on the ground of error and fraud, and after an exhaustive investigation, both in the Circuit and this court, a decree was entered, dismissing the bill. *Maxwell Land Grant Case*, 121 U. S. 325; 122 U. S. 365; *Interstate Land Company* v. *Maxwell Land Grant Company*, 139 U. S. 569, 580, in which it was said:

"The confirmation and patenting of the grant to Beaubien and Miranda operated to divest the United States of all their rights to the land embraced in the grant which this country acquired from Mexico by the treaty of Guadalupe Hidalgo. And the only way that that grant can be defeated now is to show that the lands embraced in it had been previously granted by the Mexican government to some other person."

See also *Beard* v. *Federy*, 3 Wall. 478; *More* v. *Steinbach*, 127 U. S. 70. The confirmation of this grant was made by act of Congress of June 21, 1860, c. 167, 12 Stat. 71. Whatever doubts might have existed before as to the limits or extent of the grant, were settled by that confirmation. *Langdeau* v. *Hanes*, 21 Wall. 521; *Tameling* v. *United States Freehold Co.*, 93 U. S. 644. The only claim of the defendants is one under the United States, arising on April 6, 1874, fourteen years after the confirmation of the Maxwell Land Grant. It is therefore inferior and subordinate to that of the plaintiff.

In order to obviate the effect of this, the defendants offered to prove on the trial that the survey described in and upon which the patent was based was inaccurate, and that a correct survey would run the lines of the Maxwell Land Grant so as to exclude therefrom the tract in controversy. This testimony was rejected by the court, and this is the error complained of.

In the suit brought to set aside the patent, it was said by this court, 121 U. S. 382:

"In regard to the questions concerning the surveys, as to their conformity to the original Mexican grant and the frauds which are asserted to have had some influence in the making of those surveys, so far from their being established by that

satisfactory and conclusive evidence which the rule we have here laid down requires, we are of opinion that if it were an open question, unaffected by the respect due to the official acts of the government upon such a subject, depending upon the bare preponderance of evidence, there is an utter failure to establish either mistake or fraud."

The accuracy of the survey is, therefore, so far as the government is concerned, no longer open to inquiry. If in a direct proceeding in equity brought by the United States to set aside the patent on the ground of error in the survey the matter has become *res judicata*, it would seem that the patentee could not be compelled in every action at law between itself and its neighbors to submit the question of the accuracy of the survey as a matter of fact to determination by a jury. Nor is the matter open to such inquiry. A survey made by the proper officers of the United States, and confirmed by the Land Department, is not open to challenge by any collateral attack in the courts. By section 453, Revised Statutes, full jurisdiction over the survey and sale of the public lands of the United States, and also in respect to private claims of land, is vested in the Commissioner of the General Land Office, subject to the direction of the Secretary of the Interior. In *Cragin* v. *Powell*, 128 U. S. 691, 698, it was said by Mr. Justice Lamar, speaking for the court, and citing in support thereof a number of cases:

" That the power to make and correct surveys of the public lands belongs to the political department of the government, and that, whilst the lands are subject to the supervision of the General Land Office, the decisions of that bureau in all such cases, like that of other special tribunals upon matters within their exclusive jurisdiction, are unassailable by the courts, except by a direct proceeding; and that the latter have no concurrent or original power to make similar corrections, if not an elementary principle of our land law, is settled by such a mass of decisions of this court that its mere statement is sufficient."

The case of *Beard* v. *Federy, supra*, is in point. In that case the effect of a patent to land in California, after confirma-

tion and survey, was before the court.   The land, as in this case, was claimed under an old Mexican grant, and while the proceeding for confirmation of such claims in California dif-. fered from that pursued in New Mexico, yet the result of the confirmation was the same.   There as here was a statutory provision that the confirmation should not prejudice the rights of third persons, and some reliance was placed upon that pro- vision.   It was said by the court, discussing this entire ques- tion, on page 492 :

" By it (the patent) the government declares that the claim asserted was valid under the laws of Mexico ; that it was entitled to recognition and protection by the stipulations of the treaty, and might have been located under the former government, and is correctly located now, so as to embrace the premises as they are surveyed and described.   As against the government this record, so long as it remains unvacated, is conclusive.   And it is equally conclusive against parties claiming under the government by title subsequent.   It is in this effect of the patent as a record of the government that its security and protection chiefly lie.   If parties asserting inter- ests in lands acquired since the acquisition of the country could deny and controvert this record, and compel the patentee, in every suit for his land, to establish the validity of his claim, his right to its confirmation, and the correctness of the action of the tribunals and officers of the United States in the location of the same, the patent would fail to be, as it was intended it should be, an instrument of quiet and security to its possessor. The patentee would find his title recognized in one suit and rejected in another, and if his title were maintained, he would find his land located in as many different places as the vary- ing prejudices, interests, or notions of justice of witnesses and jurymen might suggest.   Every fact upon which the decree and patent rest would be open to contestation.   The intruder, resting solely upon his possession, might insist that the original claim was invalid, or was not properly located, and, therefore, he could not be disturbed by the patentee.   No construction which will lead to such results can be given to the fifteenth section.   The term ' third persons,' as there used,

does not embrace all persons other than the United States and the claimants, but only those who hold superior titles, such as will enable them to resist successfully any action of the government in disposing of the property."

In *More* v. *Steinbach*, *supra*, the same propositions were affirmed, the court saying, on page 83 : " All the questions necessarily involved in the determination of a claim to land under a Spanish or Mexican grant, and in establishing its boundaries, are concluded by it in all courts and proceedings, except as against parties claiming by superior title, such as would enable them to resist successfully any action of the government in disposing of the property." See also *Stoneroad* v. *Stoneroad, ante,* 240.

These authorities are decisive upon this question. And in the nature of things a survey made by the government must be held conclusive against any collateral attack in controversies between individuals. There must be some tribunal to which final jurisdiction is given in respect to the matter of surveys, and no other tribunal is so competent to deal with the matter as the Land Department. None other is named in the statutes. If in every controversy between neighbors the accuracy of a survey made by the government were open to question, interminable confusion would ensue. Take the particular case at bar ; if the survey is not conclusive in favor of the plaintiff, it is not conclusive against it. So we might have the land grant company bringing suit against parties all along its borders, claiming that, the survey being inaccurate, it was entitled to a portion of their lands, and, as in every case the question of fact would rest upon the testimony therein presented, we should doubtless have a series of contradictory verdicts ; and out of those verdicts, and the judgments based thereon, a multitude of claims against the United States for return of money erroneously paid for land not obtained, or for a readjustment of boundaries so as to secure to the patentees in some other way the amounts of land they had purchased.

It may be said that the defendants have the same right to rely upon the regular surveys, that the plaintiff has upon the survey of this special land grant. This is undoubtedly true,

but the survey is one thing and the title another.    If sectional lines had been run through the entire limits of the Maxwell grant, it would not thereby have defeated the grant or avoided the effect of the confirmatory act.    A survey does not create title; it only defines boundaries.    Conceding the accuracy of a survey is not an admission of title.    So the boundaries of the tract claimed by defendants may not be open to dispute, but their title depends on the question whether the United States owned the land when their ancestor filed his homestead claim thereon.    If at that time the government had no title, it could convey none.

In this connection it may be well to notice a distinction which interprets some dicta and decisions found in respect to the jurisdiction of courts over boundaries.    Whether a survey as originally made is correct or not is one thing, and that, as we have seen, is a matter committed exclusively to the Land Department, and over which the courts have no jurisdiction otherwise than by original proceedings in equity.    While on the other hand, where the lines run by such survey lie on the ground, and whether any particular tract is on one side or the other of that line, are questions of fact which are always open to inquiry in the courts.    In the case before us the offer was not to show that the land in controversy was one side or other of the line established by the survey.    On the contrary, it was conceded that it was within the limits of the survey, and the offer was simply to show that that survey was inaccurate, and that the lines should have been run elsewhere, but this is not a matter for inquiry in this collateral way in the courts.

There was no error in the ruling of the Circuit Court, and its judgment is

*Affirmed.*