LYRIC THEATER *v.* STATE.

Opinion delivered March 27, 1911.

1. INJUNCTION—PUBLIC NUISANCE.—Before an injunction will be issued restraining acts constituting a public nuisance, it is necessary that such nuisance affect the civil or property rights or privileges of the public or the public health; it is not sufficient that such acts are criminal. (Page 439.)

2. NUISANCE—WHEN NOT RESTRAINED.—Theatrical performances or exhibitions on Sunday, where admittance is charged, are criminal and may become a public nuisance, but will not be enjoined, since neither the civil or property rights or privileges of the public nor the public health is affected. (Page 440.)

Appeal from Sebastian Chancery Court; *J. V. Bourland,* chancellor; reversed.

*Cravens & Cravens,* for appellants.

1. The court should have sustained the demurrer because it did not state facts sufficient to constitute a cause of action nor fact sufficient to give the chancery court jurisdiction. Courts of equity will not interfere where the acts complained of do not work great and irreparable injury, and where no private property or corporate rights are involved. 25 Ark. 301. Injunction does

not lie to restrain a public nuisance unless it affects the civil property rights of the State or the public health. 81 Ark. 117; 14 Mo. App. 413; 78 Ill. 237; 99 Ill. 489; 102 Ill. 449; 158 U. S. 564; 37 S. W. 478. A failure to enforce the law prohibiting such entertainments as Sunday shows confers no jurisdiction on courts of equity. 37 S. W. 478; 81 Ark. 117. Nor does injunction lie to prevent a violation of the criminal laws. 55 Ark. 10; 2 Wood on Nuisances, § 788 to 791; 37 S. W. 478; 42 Am. Rep. 182.

2. Where the remedy is complete at law, equity is without jurisdiction. 13 Ark. 630; 26 *Id.* 649; 27 *Id.* 331; 102 Ill. 449: 141 N. Y. 232. If appellants violated the law they could have been prosecuted; if the show was a nuisance, it could have been abated. Kirby's Digest, § 5438; 35 Ark. 352.

*Hal L. Norwood,* Attorney General, *Wm. H. Rector,* assistant, for appellee.

A public nuisance, irremediable at law, will be enjoined. *Vaughan* v. *State,* 81 Ark. 117, only holds that a crime at common law adequately remedied by fine, imprisonment and abatement will not be enjoined—the remedy at law being complete and adequate—and does not apply to this case.

FRAUENTHAL, J. This was a suit instituted in the name of the State of Arkansas on the relation of the prosecuting attorney of the Twelfth Judicial Circuit, seeking to enjoin appellants from giving any vaudeville or moving picture shows upon Sunday in a theater conducted by them in the city of Fort Smith. It was alleged in the complaint that appellants had advertised that they would conduct such shows at their theater on certain Sundays, and, upon being notified by the law officers that they would be arrested for the offense of Sabbath breaking if they did so, they thereupon made no charge for admittance to such performances in order to evade the criminal laws of the State in that respect. It was further alleged that such Sunday performances were legally and morally wrong, and would tend to create a violation of the Sabbath breaking laws; that they would bring together a lawless and turbulent assembly of persons, which would result in an injury to the morals and general welfare of the people of that community, and that such performances constituted a public nuisance. It was also claimed that one of the purposes of appel-

lants in giving such Sunday exhibitions was to advertise their show which was given during the other days of the week, and that the amount of the fine fixed by law for Sabbath breaking was not sufficient to prevent appellants from violating such laws.

There was a demurrer interposed to this complaint, which was overruled. Thereupon, the appellants filed an answer in which they denied that these performances given by them were illegal, or that they constituted a nuisance. They alleged that the persons assembled at such exhibitions were quiet and orderly, and that the performances were of a good and proper character, and not detrimental to the moral and religious sentiment of the people.

It appears that the appellants were, and had been for some time prior to the filing of the complaint herein, engaged in giving moving picture shows in a building located on one of the principal streets in the city of Fort Smith. They advertised that on Sunday, October 30, 1910, and on the following Sunday, they would give these performances at their theater, and did so. There was no charge of any kind made for admission to these performances. The evidence shows that these performances were given in an inclosed building, and consisted of moving pictures. On the first Sunday there was portrayed by these pictures the life of Damon and Pythias, accompanied by a lecture thereon and sacred songs and music; and on the following Sunday night the performance was of a similar character. The undisputed evidence shows that neither the moving pictures, songs or music were immoral or objectionable in any regard.

Upon final hearing of this cause the chancellor entered a decree perpetually enjoining the appellants from giving these performances in their theater upon Sunday, and from this decree they have appealed to this court.

The question involved in this case is whether or not the acts complained of were of such a nature as a court in the exercise of its chancery jurisdiction would restrain. The appellants could not be enjoined from doing any act which was not in itself wrongful. Under the undisputed testimony adduced upon the trial of this case, the performances themselves were not of a character which was illegal or immoral. It is contended, however, that the day upon which these performances were given,

being Sunday, made them wrong and immoral. It is urged that the giving of the performances upon Sunday constituted an infraction of the law against Sabbath breaking, and that they gathered together an assembly of lawless and turbulent persons, and that this constituted a public nuisance. But the illegal acts thus complained of were only violations of the criminal laws; and courts of equity will not interfere simply for the purpose of restraining acts constituting crimes because they are criminal. Courts of equity do not exercise their powers to enforce the criminal laws.

It has been held by this court that theatrical performances or exhibitions given upon a Sunday, where admittance is charged, are violations of the law against Sabbath breaking. *Quarles* v. *State,* 55 Ark. 10.

It is also well established that, although a theater is not a nuisance in itself, still it may become a public nuisance where it collects together a crowd of noisy and lawless people to the annoyance of the community in which it is situated; and such a nuisance is a violation of the criminal laws of the State and punishable. Bishop on Criminal Law, § 1135; 29 Cyc. 1183.

It is true that courts of equity have jurisdiction to enjoin acts constituting public nuisances and to abate them. But such jurisdiction is interposed solely for the protection of property or of civil rights; and, whether the nuisance be private or public, the same principle must guide the interference of a court of equity in both cases. In the absence of an injury to property or to civil rights, the chancery court has no jurisdiction to restrain acts simply because they are criminal, nor has it the power to enforce the performance of moral duties solely as such. The power of a court of equity to exercise its jurisdiction in cases similar to the one herein has been fully discussed by this court in the case of *State* v. *Vaughan,* 81 Ark. 117, and its right to issue an injunction against acts constituting a public nuisance has therein been determined. In that case it is said that there are some courts holding that common law nuisances may be restrained by injunction; and, after discussing the legality of the exercise of such right, this court finally decided that "it is a sound principle of equity jurisprudence that an injunction will not lie at the instance of the State to restrain a public nuisance

where the nuisance is one arising from the illegal, immoral or pernicious acts of men which for the time being make the property devoted to such use a nuisance, where such nuisance is indictable and punishable under the criminal law." It was there held that, before an injunction could issue restraining acts constituting a public nuisance, it was necessary that the public nuisance should affect the civil or property rights or privileges of the public, or the public health; that the criminality of the act itself will not be sufficient to give jurisdiction in chancery. In that case the defendants were charged with operating what is known as a "turf exchange," or pool room, where a great number of people were assembled for the purpose of gambling. It was there held that this was in effect a gaming house, where these people were congregated, and that it constituted a public nuisance and a common-law misdemeanor, but that it did not touch civil property rights or the privileges of the public, and that an injunction would not lie at the instance of the State to restrain the operation and maintenance of this public nuisance.

We think that the principles enunciated in the opinion delivered in that case are controlling in the case at bar, even if the testimony proved that the appellants were violating the law against Sabbath breaking or the law against maintaining a public nuisance. No civil property rights or privileges of the public were affected by the giving of these performances; and therefore there was no ground shown for the exercise by a court of chancery of its power to issue a writ of injunction herein. In re *Debs,* 158 U. S. 590; *State* v. *Patterson,* 37 S. W. 478; *Attorney General* v. *Evart Booming Co.,* 34 Mich. 462.

The decree is therefore reversed, and the complaint dismissed.