## BEARD v. UNITED STATES.
### No. 6055.

Circuit Court of Appeals, Ninth Circuit.
June 2, 1930.
Rehearing Denied July 14, 1930.

Muhleman, Anderson & Palmer and C. Sherman Anderson, all of Los Angeles, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and P. V. Davis and Emmett E. Doherty, Asst. U. S. Attys., all of Los Angeles, Cal., and H. P. Dechant, U. S. Forest Service, of San Francisco, Cal., for the United States.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

The government brought this action to abate by injunction a public nuisance, a purpresture on public lands, which constitute a part of the Angeles National Forest, to prevent the interference by the defendant with the ranger station established by the government in the West Fork of San Gabriel Canyon, alleged to be necessary for the protection of the forest reserve. The appellant purchased the S.½ of the S.½ of section 16, township 2 north, range 11 west, S. B. M., by mesne conveyances from the patentee of the state of California, it having been granted the state of California as school lands. Appellant claims that the ranger station is on the land to which he thus holds title by these mesne conveyances, and in his answer asks that his title thereto be quieted. The decree enjoined the appellant from interference with the ranger station, and declared that the appellant owned the fractional section claimed, as established by the government survey of 1927 made by D. R. Averill, and not according to a private survey by Friel, attempting to locate said land according to a purported government survey of 1876 by Norway.

The real dispute is over the location of the land in question. The appellant caused a survey to be made by Friel who located his land so that it includes the ranger station in question. In 1927 the government caused a resurvey of the township to be made, and according to that resurvey the S.½ of the S.½ of section 16 does not include the ranger station. The resurvey of 1927 is shown in the accompanying diagram, and superimposed thereon are the three locations of A, B, and C of that subdivision as determined by Friel.

712

A and B being the result of the incomplete survey in March, 1924, and C being the location finally determined upon by Friel in October, 1924.

(Resurvey of 1927 is here set forth.)

an, and the north and south boundary lines at an angle of about 20 degrees with the parallel of latitude. The original survey of the N.½ of this township was made by W. H. Norway in 1875. The S.½ of the township

In accordance with the resurvey the southwest corner of section 16 is a half-mile north and more than a quarter of a mile east of the point selected for that corner by Friel in his survey of location C, and the southeast corner of the section is about 3,148 feet east and ⅞ of a mile north of the section corner as located by the resurvey. The resurvey places the land claimed by the appellant on the side of a steep mountain, while in Friel's survey the north and south lines of the land are placed respectively on the north and south sides of the west fork of the San Gabriel river. The tract of land as surveyed by Friel is a parallelogram with the east and west boundary lines of the tract upon the meridi-

was surveyed later in 1884 by G. W. Pearson. (See location C on map.)

The land of the appellant, as located by Mr. Friel, is a little east and about a mile and a half north of the Mt. Wilson observatory. The region is very mountainous, elevations varying as much as 2,000 feet in a section. The plat of the Norway survey in the land office shows the west fork of the San Gabriel river flowing almost due east through the S.½ of section 16. It also shows a stream flowing southeasterly through the W.½ of the SW.¼ of section 16, joining the west fork of the San Gabriel in that quarter-section. This is assumed by Friel to be Short Cut Canyon, which in fact runs due north

for nearly a mile and then turns east. The first question to be determined is as to whether or not this action can be maintained by the government.

In considering that question it should be stated that the appellant brought an action in a state court to eject one of the forest rangers from the ranger station. The action was brought against him individually and a judgment of eviction was rendered by the court. Since that time the appellant has claimed title to the land as located by the Friel survey, has taken possession thereof and has threatened to interfere with the operations of all the officers of the government thereon and, to thus prevent the maintenance of the ranger station. It was shown that the maintenance of this station is essential to the protection of the forest reserve.

■ Appellant filed an answer praying that he be adjudged to be the owner entitled to possession of the land in question according to the survey of Norway and the judgment in Beard v. Cecil based upon the Friel survey. This right to maintain such an action to protect lands in a forest reserve was sustained by the United States District Court for Montana in United States v. Hodges, 218 F. 87, under the well-established rule that a sovereign may bring an action in equity to abate a public nuisance, a purpresture, citing Story Eq. Juris., § 921; 29 Cyc. 1179, 1219; 32 Cyc. 1271; U. S. v. Brighton Ranche Co. (C. C.) 26 F. 218; see, also, 29 Cyc. 1219; also, see People v. Park & Ocean Ry., 76 Cal. 156, 18 P. 141; Attorney Gen. v. Evart Booming Co., 34 Mich. 462. In the case of Burch v. U. S. (C. C. A.) 41 F.(2d) 709, this day decided, the government proceeded in a similar action in equity to require the removal of a fence alleged to encroach upon a forest reserve. The defendant did not raise the jurisdictional question, but our decision therein necessarily sustains the jurisdiction of the trial court as a court of equity to require the removal of the fence encroaching upon the forest reserve. The United States Circuit Court, District of Nebraska, in U. S. v. Brighton Ranche Co., 26 F. 218, supra, sustained the equity jurisdiction in an action by the government to require the removal of a fence encroaching upon the public domain. The right of a sovereign to protect his forest against purpresture by injunction, or otherwise, is a very ancient one. See Enc. Brit., vol. 9, subj. Forests, subd. Forest Law, at p. 409, column 2; Halsbury's Laws of England, vol. 17, p. 474, note; Id., vol. 9, p. 115, note Q.; Id., vol. 7, p. 183; see purpresture, Bouvier's Law Dictionary, and authorities cited.

■ With reference to the location of the land described in the patent from the state of California to the appellant's predecessor, the appellant correctly states that, "The question to be asked is, can the S.½ of the S.½ of section 16 as surveyed and platted by Norway, be found on the ground? The witness for the government testified, and the trial court found it to be a fact, that Norway did not survey the land in question. If this is true, it would of course be impossible to locate the land as it was located by Norway, because he did not locate it. No monuments established by either Norway or Pearson have been found within the exterior boundaries of the township. The resurvey by Averill in 1926–27 was based upon six corners established by Norway found along the north and west lines of the township, and conform to those corners. Thus, the resurvey by Averill is based upon the Norway survey and was correct in principle. Galt v. Willingham (C. C. A.) 11 F.(2d) 757, 758, 759; Blackburn v. Nelson, 100 Cal. 336, 338, 34 P. 775; Harrington v. Boehmer, 134 Cal. 196, 199, 66 P. 214, 489.

In making his surveys, Friel used the west fork of the San Gabriel as a monument which should control directions and distances as stated in the plat and field notes of the Norway survey. For this reason, in location C, he shifted the north and south boundary of the tract to an angle of 20 degrees to conform to the direction of the west fork of the San Gabriel. The fundamental difficulty, however, which confronted him in undertaking to locate the land in question was the impossibility of finding an established point from which to make the survey, as none was in fact established. The three possible locations made by him indicate clearly this difficulty.

The first survey was made in March, 1924, but was not entirely completed. In the plat thereof he shows two alternate locations of the land, A and B, A fixed by approximating the points of intersection of the meridians bounding section 16 with the north and south township line and locating the land in question by proportional distances on said meridian.

The other possible location of land "B" was made by taking the point of intersection of the said east meridian with the west fork of the San Gabriel river and measuring 7½ chains south therefrom for the southeast corner of section 16, and in similar fashion establishing the southwest corner by measuring south 2½ chains from the west fork of the San Gabriel, which he refers to as a creek.

The south boundary line running from the southwest corner S. 54° 39' E. 48.56 chains, thence north 51° 57' E., 51.20 chains to the southeast corner, is thus run to avoid crossing the West Fork of the San Gabriel river, as such crossing is not indicated in the field notes of the Norway survey.

The third survey he made by starting at a point where the Mt. Wilson road enters the West Fork Canyon and from this point ran easterly about 2½ or 3 miles, estimating his distances from the plat of the Norway survey instead of from the field notes. He estimated that the west boundary line of section 16 was about ⅜ of a mile east of the trail and a quarter mile west of the junction of the West Fork and the Short Cut Canyons. Assuming this point as on the west boundary line of section 16 he made a search south of the stream and found a mound of rock. He then based his entire survey upon this mound of rock which he assumed to be the southwest corner of section 16, and in following the lines he ran north from that point about a quarter of a mile and concluded that the calls of the Norway survey fitted into the topography of the line. At 20 chains he set a quarter-section corner. He then went a mile east from the north and south line just described to a point where the meridian would cross the creek on a southeast course; then he assumed this point to be on the east boundary line of the section and went south 7.50 chains and set the southeast corner of the section; then ran north from this corner 40 chains. This latter survey is based entirely upon the topography of the country and its alleged correspondence with the field notes of Norway's survey. By this method an imaginary point in the channel of the West Fork of the San Gabriel river was determined. The only corroborating evidence is a mound of rock found on the imaginary boundary of section 16 drawn through the imaginary point in the bed of the West Fork on the San Gabriel, determined not by calls in the field notes of the survey, but by approximations from the plat. There is nothing in the notes of either the Norway or Pearson survey to indicate that the mound of rock found by Friel was set by them, and in fact nothing to satisfactorily show that it was established by any survey.

The sum and substance of the evidence upon which Mr. Friel based his location of the mound in question is contained in the following questions and answers:

"Mr. Anderson: After an examination of the field notes and plat, Mr. Friel, would you say that there is any other location of the S½ of the S½ of section 16 that would fit the topography other than that as located by this resurvey that you made? A. I could not find any.

"Mr. Dechant: That is objected to on the ground the witness says he hasn't run all the lines of this survey and further that it is incompetent, irrelevant and immaterial.

"The Court: I will allow the question.

"Mr. Dechant: An exception. A. There is no other place. There is no other place in the township.

"That he had gone over the United States Geological survey map of the entire township and a portion of the township on the ground and judging from the maps and in his opinion and in viewing the ground there was no other place that would fit the Norway calls for the S.½ of the S.½ of section 16, but he did not really know."

In view of the fact that practically the only question involved in this case is the accuracy or the validity of the survey of Mr Friel, we quote his testimony, in part, as follows:

"While doing the survey in March, 1924, a snow storm came on and he had to return to Los Angeles and could not complete the survey, nor locate lines definitely; that plaintiff's exhibit No. 8 was made in his office under his supervision from data obtained in March, 1924; that he made a report accompanying the report introduced in evidence as defendant's Exhibit 'M'; that he projected the meridian lines, being north and south lines, from information obtained from the maps, using the San Gabriel River as a monument as called for, and using the Norway calls for the crossing of the meridian lines he figured 7½ chains south from the creek for what would be the southeast corner of section 16 and then measured 2½ chains south from the creek on the west line of section 16 for the southwest corner of section 16; that Norway's field notes called for a direct line between those two points for the south line of section 16; that the bend in the river would not allow a straight line to be drawn so that the south line of section 16 would lie south of the West Fork of the San Gabriel as called for by Norway, and it was necessary to make a crook in the south line which was platted and was not run in the field. Using the Norway field notes for the call or distance on the east line south from the river and also on the west line of section 16, measured north the pro rata distance from the river on both the east and west lines of section 16 for the northeast and northwest corners and then

drew a direct line on the map between the last two corners, plaintiff's Exhibit No. 8 being prepared from such information as was obtained prior to the snow storm when investigations had to cease.

"Two or three months later, having with him the Norway notes and plat and Pearson notes and plat, he searched especially for the southeast and southwest corners of section 16, first located the bed of the canyon from a point where the old Mt. Wilson road enters the West Fork easterly to a point about 2½ or 3 miles, then located the principal canyons. The official plat showing that the southwest corner of section 16 lay between the point where the trail from Mt. Wilson entered the West Fork and the junction of West Fork and Short Cut Canyon about three-eighths of a mile east of the trail and about a quarter mile West of the Junction of Short Cut Canyon, he made search at that point on the south side at the foot of the hill and south of the creek and found the remains of a very old mound of rock, it being a hand built mound, nothing in it to indicate what it was built for but it was recognizable as a mound put there in connection with some survey. A photograph of the mound received as defendant's Exhibit 'N.'

"Commencing at a point in the center of the mound of rock he ran north, testifying from defendant's Exhibit 'C,' being a certified copy of Norway's field notes at page 22, going north from the southeast corner of section 16, Norway called '7.50. Cross creek 6 links wide, branch of the San Gabriel, course southeast; ascend.' "

"That in making the survey as shown on defendant's Exhibit 'F' he did not go to any known township corner; that he knew of a corner by hearsay, being the Northwest corner of section 2; that he actually ran a portion of the east and west lines of section 16 measuring these by stadia instead of chaining; that the south line of his survey was about 20° off of the true east and west line, that is, point 'A' (Defendant's Exhibit 'F') would be about 1800 feet north of a true east and west line from point 'C'; that he does not claim that the S.½ of the S.½ of section 16 is the only piece of land in the township that Norway surveyed; that he claims Norway made surveys in there; that he did not examine any other section than section 16 for identification of other surveys, but from his knowledge as a surveyor and from examination of the ground would say if Norway had made survey of 16, particularly of the S.½ as indicated on defendant's Exhibit 'F,' the topography of the S.½ of section 16 should couple up with the topography of adjoining sections, but was not looking for that; was only looking for the topography of the S.½ of the S.½ of section 16."

"* * * That the point 'G' (Exhibit F) being the junction of the West Fork and Short Cut Canyon was a natural monument according to Norway's plat; that Norway did not call for the West Fork and Short Cut Canyon in his notes."

The conclusion of the trial court that neither Norway nor Pearson made a survey of the township was fully justified by the evidence. It was, therefore, impossible to retrace the lines of the Norway survey, because there were no such lines in the interior of the township. It therefore follows that the monument relied upon by Friel in his final location of the S.½ of the S.½ of section 16 is not a monument established by that survey, and that the Averill survey based upon the corners established along the township line is the most accurate possible location of the lands conveyed to the appellant's predecessor by patent from the state of California.

Judgment affirmed.