Charles B. GONSALES, Plaintiff,

v.

Frederick A. SEATON, Secretary of the Interior, Defendant.

Civ. A. No. 2497–59.

United States District Court District of Columbia.

May 11, 1960.

Plaintiff's application for oil and gas leases on certain lands in New Mexico, filed under the Mineral Leasing Act of 1920, as amended,[1] has been denied by the defendant on the ground that the lands are not public lands but are part of the Navajo Indian Reservation. After pursuing his administrative remedies without success, plaintiff brought this action for a declaratory judgment that the lands sought to be leased are public lands.

By the Treaty With The Navajo Indians, June 1, 1868, 15 Stat. 667, the Government set aside a reservation for the Navajos. Its boundaries were described as follows:

> " * * * bounded on the north by the 37th degree of north latitude, south by an east and west line passing through the site of old Fort Defiance, in Cañon Bonito, east by the parallel of longitude which, if prolonged south, would pass through old Fort Lyon, or the Ojo-de-oso, Bear Spring, and west by a parallel of longitude about 109° 30′ west of Greenwich * * * ". 15 Stat. at page 668.

Bear Spring is apparently a body of water about nineteen miles south of the southeastern corner of the reservation and it can be seen from the above that the eastern boundary of the reservation was to be a straight line north from this fixed natural object. The original survey of this boundary was made by Ehud Darling in 1869. After setting the southeastern corner, he travelled north for about sixty-seven miles, laying markers along the way, until he came to the San Juan River. The country north of the river was so rough that Darling was unable to proceed farther in that direction

Armour, Herrick, Kneipple & Allen, Philip F. Herrick, Washington, D. C., for plaintiff.

Thomas L. McKevitt, Dept. of Justice, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

This case is before the Court on the defendant's motion for summary judgment.

---

**1.** 30 U.S.C.A. § 226 reads in part:
" * * * When the lands to be leased are not within any known geological structure of a producing oil or gas field, the person first making application for the lease who is qualified to hold a lease under said sections shall be entitled to a lease of such lands without competitive bidding * * * ".

Plaintiff has contended that he is the first qualified applicant for the lands here involved and that these lands are not within any known geological structure. This has not been denied by the defendant and thus is accepted as true for purposes of this motion.

and so offset several miles to the west and then continued north. It is questionable whether any of Darling's markers can now be found.

■ The dispute comes down to this: the lands sought to be leased lie north of the San Juan River and are either just within the Navajo Reservation or else they are public lands bordering on part of the eastern boundary. If the lands are within the reservation, there is no question but that plaintiff's application was properly denied since lands within an Indian reservation are not subject to the leasing provisions of 30 U.S.C.A. § 226. But if the lands lie outside the Navajo Reservation, they are public lands and thus the defendant would be required to issue leases to the plaintiff since he was the first qualified applicant.[2]

Plaintiff's contention is that the treaty line as surveyed and projected by Darling is the official one and that the lands sought to be leased are to the east of this line. Defendant argues that its official records, which include Darling's survey as well as other surveys based on Darling's, put the lands within the reservation.

■ The Court is of the opinion that the plaintiff should have an opportunity to show that the treaty line as laid by Darling puts the lands sought to be leased outside the reservation. As has been noted, the defendant is required to grant plaintiff's applications if the land is public land; this mandatory nature of the statute would become a dead letter in the circumstances of this case if the Court were to hold unreviewable the defendant's decision that the land is not public land. If the surveyors after Darling relied upon Darling's markers and these markers had been moved away from the place where Darling placed them, it would appear that those later surveys are in error. While Darling's errors, if any, may be too late to ques-

tion, later surveys, seeking to reestablish Darling's original line, may be examined to see if they were successful. Galt v. Willingham, 5 Cir., 1926, 11 F.2d 757; and see Beard v. United States, 9 Cir., 1930, 41 F.2d 711, certiorari denied, 1930, 282 U.S. 886, 51 S.Ct. 90, 75 L.Ed. 781.

■■ The principal point urged by the defendant is that the Court has no jurisdiction to change or direct an existing public survey. But the issue is not whether a survey should be changed. The issue is "where the lines run by such survey lie on the ground, and whether any particular tract is on one side or the other of that line, [and these] are questions of fact which are always open to inquiry in the courts." Russell v. Maxwell Land-Grant Co., 1895, 158 U.S. 253, 259, 15 S.Ct. 827, 830, 39 L.Ed. 971. Since these questions are here in dispute, the defendant's motion for summary judgment must be denied.

2. "Section 17 [30 U.S.C.A. § 226] is mandatory in directing that a lease be issued to the person (a) who first makes application and (b) who is qualified under

certain other sections of the Act to hold a lease." McKay v. Wahlenmaier, 1955, 96 U.S.App.D.C. 313, 317, 226 F.2d 35, 39.