**FRIENDS OF THE BLACK FOREST REGIONAL PARK, INC.**, a Colorado nonprofit corporation; Dennis Hartley and Deborah Hartley, individually; James Fine and Jennifer Fine, individually; and Raymond A. Miller and Cynthia L. Miller, individually, Plaintiffs–Appellees,

v.

**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF EL PASO**, Defendant–Appellant,

and Concerning **Kings Deer Development, LLC**, a Colorado limited liability company, Intervenor–Appellant.

No. 01CA2253.

Colorado Court of Appeals, Div. III.

April 24, 2003.

Certiorari Denied Dec. 1, 2003.

Sparks Willson Borges Brandt & Johnson, P.C., Kenneth Sparks, Stephen A. Hess, Colorado Springs, Colorado, for Plaintiffs–Appellee.

Michael A. Lucas, County Attorney, Jay A. Lauer, Assistant County Attorney, Colorado Springs, Colorado, for Defendant–Appellant.

Anderson, Dude & Lebel, P.C., Lenard Rioth, Bennie H. South, Colorado Springs, Colorado, for Intervenor–Appellant.

Opinion by Judge ROY.

Defendant, Board of County Commissioners of the County of El Paso, Colorado (county), and intervenor, Kings Deer Development, LLC (developer), appeal the trial court's judgment in favor of plaintiffs, Friends of the Black Forest Regional Park, Inc., Dennis and Deborah Hartley, James and Jennifer Fine, and Raymond and Cynthia Miller. We affirm.

This case concerns a determination of the permitted uses of property described as the W 1/2 of the SW 1/4 of Section 12, Township 12 South, Range 66 West of the 6th P.M. (subject property), which is the south portion of the El Paso County Black Forest Regional Park (the park).

The first issue is whether a prior owner of the subject property created a road easement thirty feet in width along the west section line of Section 12 (the road easement). We conclude that the road easement does not exist. The second issue is whether the use of the subject property is restricted by 16 U.S.C. § 484a (2002)(the Sisk Act), so as to prevent the construction of a road through and across it. We conclude that the Sisk Act prohibits construction of the road.

In 1919, a lumber company owned all the pertinent parts of Sections 1, 2, 11, and 12. These four sections form a square, with the northeast quarter being Section 1, the northwest quarter being Section 2, the southwest quarter being Section 11, and the southeast quarter being Section 12. Section 10 is immediately west of Section 11 and the described square. The county road network does not penetrate the square.

In 1921, the lumber company conveyed Section 11 and other lands by a deed that contained the following pertinent language:

> [I]t is expressly understood and agreed between the parties hereto that this conveyance is made subject to a right of way over and across a strip of land thirty (30) feet wide on each side of each section line, said right of way being reserved for use as a future roadway for the benefit of the owners of the tract and owners of adjoining tracts in these sections and adjacent sections, with the intent hereof being to have section lines available for road purposes as occasion demands. . . .

The other lands conveyed in the 1921 deed included both sides of the section lines between Sections 1 and 2 and Sections 2 and 11 along their entire lengths and both sides of the section line between Sections 10 and 11 along its southerly portion.

In 1932, the lumber company conveyed the subject property by a deed that stated, inter alia, the conveyance was "subject to right of way for road purposes along section lines." Eventually the subject property was conveyed to the United States Forest Service (USFS) in 1944.

In the 1970s, pursuant to a special use permit from the USFS, the county began

using the subject property and adjacent county property as the park. The permit stated nine specific purposes for which the subject property could be used, which included roadway and other park purposes. The county installed park facilities.

In 1999, the USFS conveyed the subject property to the county subject to the pertinent limitations of the Sisk Act, which applies to exchanges of forest service lands and states:

> Whenever an exchange of land is proposed by a ... county ... [pursuant to] authority ... under which the Secretary of Agriculture is authorized to exchange national forest lands or other lands administered by the Forest Service, [the exchange may be completed upon certain conditions] ....
>
> The provisions of this section shall not be applicable to the conveyance in exchange of more than eighty acres to any one ... county .... Lands may be conveyed to any ... county ... pursuant to this section only if the lands were being utilized by such entities on January 12, 1983. *Lands so conveyed may be used only for the purposes for which they were being used prior to conveyance.*

16 U.S.C. § 484a (emphasis added).

The terms of the deed from the USFS to the county stated, in pertinent part:

> SUBJECT TO the limitations pursuant to the authority of Sec. 8(b) of the Act of January 12, 1983 (96 Stat. 2535), which amended the Act of December 4, 1967 (82 Stat. 531) and states: "lands may be conveyed to any State, County, or municipal government pursuant to this Act only if the lands were being utilized by such entities on the date of the enactment of this sentence. *Lands so conveyed may be used only for the purposes for which they were being used prior to the conveyance."* *Therefore, Grantee agrees and covenants that the above-described land will be used for local government purposes in perpetuity ....*

(Emphasis added.)

Developer now owns all, or substantial portions of, Sections 1 and 2. Friends of the Black Forest Regional Park, Inc., is a non-profit corporation composed of individuals who own property near the park.

An improved gravel road has been constructed on a thirty-foot easement along the east section line of Section 11, which serves residences on unplatted lots in that section and also provides access to the park facilities on the subject property. The validity of that easement is, apparently, the subject of a separate proceeding. No road has been constructed on the road easement at issue here except for slight encroachments by the road constructed in Section 11.

Developer wants to develop portions of Sections 1 and 2, and it requested that the county grant access from the south using the full sixty-foot easement along the section line between sections 11 and 12 for approximately 1650 feet. The access then would proceed north-north-east through the subject property and departs from it approximately 450 feet east of the west section line. The road would then proceed through the north portion of the park to developer's property.

Because of their concerns that the new road would create heavy traffic through the subject property, plaintiffs brought a declaratory judgment action to determine whether the road would violate the deed limitations set forth in the USFS deed to the county and the Sisk Act and whether the road easement was valid. Plaintiffs obtained a temporary restraining order to stay the zoning proceedings pending the outcome of this litigation.

Subsequently, the parties stipulated that the zoning process would proceed, but road construction would not commence pending the outcome of this litigation. The county approved the development plan with the road as proposed. Plaintiffs then amended their complaint by adding a C.R.C.P. 106(a)(4) claim for judicial review of the county's rezoning decision.

The county filed a motion to dismiss asserting that plaintiffs lacked standing, that the administrative proceedings were plaintiffs' sole remedy, and that plaintiffs had failed to join indispensable parties. Developer intervened in support of the county and argued that the Sisk Act did not apply to the transfer from the United States to the coun-

ty or alternatively that the Sisk Act did not prohibit the extension of the road for access to the subject property. The trial court denied both motions to dismiss.

Developer then filed a motion for summary judgment on the issue of whether the 1921 deed created the road easement. Plaintiffs filed opposing briefs and then, at the trial court's request, filed their own motion for summary judgment arguing that the language of the deed did not create the road easement.

The trial court ruled that plaintiffs had standing to contest the validity of the easement and that the 1921 deed did not create the road easement. The trial court also ruled that the subject property was conveyed pursuant and subject to the Sisk Act and further concluded that the USFS was not a necessary party. As to the C.R.C.P. 106(a)(4) claim, the trial court later concluded that the county did not exceed its jurisdiction or abuse its discretion in approving developer's zoning request and access through the subject property.

However, after a trial on the application of the Sisk Act, the trial court concluded that the Act prohibited construction of a road through the subject property and that developer did not have standing to argue otherwise.

This appeal followed.

## I.

We first address the trial court's ruling on plaintiffs' declaratory judgment claim. Developer contends that the trial court's conclusion on the C.R.C.P. 106(a)(4) claim that the county did not exceed its jurisdiction or abuse its discretion in approving the rezoning and access road is the law of the case and that the trial court could not subsequently reach a contrary conclusion in the declaratory judgment action pertaining to the application of the Sisk Act. The county contends that a C.R.C.P. 106(a)(4) action was plaintiffs' exclusive remedy. We disagree with both contentions.

■ Generally, the exclusive remedy for one challenging a rezoning is judicial review pursuant to C.R.C.P. 106(a)(4). However, in certain circumstances, an action for declaratory judgment may proceed contemporaneously with a C.R.C.P. 106(a)(4) action. *Norby v. City of Boulder*, 195 Colo. 231, 577 P.2d 277 (1978). In addition, a declaratory judgment action is allowed to resolve a dispute as to the applicability of a statute. Section 13-51-106, C.R.S.2002; *see Denver & Rio Grande Western R.R. v. City & County of Denver*, 673 P.2d 354 (Colo.1983).

C.R.C.P. 106(a)(4) allows the court to review an administrative agency's decision to determine whether the agency acted outside its jurisdiction or abused its discretion.

■ Here, plaintiffs sought review of the county's decision to approve developer's request for rezoning and for access across the subject property. With respect to a land use decision, the county's jurisdiction extends only to the construction and application of its own ordinances, regulations, and procedures and such matters as may be specifically delegated to it by the state or federal governments. The county's jurisdiction does not extend to, inter alia, the construction and applicability of other statutes, regulations, procedures, covenants, reservations, or conditions that may impact the use of the land. Thus, the trial court's review of the county's rezoning decision would not resolve the Sisk Act or easement issues or preclude a later declaratory judgment with respect thereto.

Here, plaintiffs requested that the trial court determine the validity of the road easement and implications of the Sisk Act, a federal statute. Thus, plaintiffs' declaratory judgment action was proper on these issues.

Accordingly, we conclude that the trial court properly considered plaintiffs' declaratory judgment action.

## II.

Developer contends that plaintiffs do not have standing to challenge the validity of the road easement. We disagree.

■ As standing concerns a court's subject matter jurisdiction, we review the trial court's determination de novo. *City of Boul-*

*der v. Public Service Co.,* 996 P.2d 198 (Colo. App.1999).

 Standing is a jurisdictional prerequisite that requires a named plaintiff to bring suit only to protect a cognizable interest. A plaintiff has standing if he or she has an "injury in fact" and that injury is to a "legally protected interest." *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977). The injury in fact test does not require that the plaintiff demonstrate an economic injury. Instead, harm to intangible values is sufficient.

Although Colorado standing jurisprudence does not duplicate the federal law, similar considerations underlie both, and Colorado courts frequently consult federal cases as persuasive authority on standing. *City of Greenwood Village v. Petitioners for Proposed City of Centennial,* 3 P.3d 427 (Colo. 2000). Thus, we consider federal precedent to determine whether plaintiffs' injury was sufficient.

The United States Supreme Court has held that aesthetic and ecological interests are sufficient to grant standing to a plaintiff. *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *see also Desert Citizens Against Pollution v. Bisson,* 231 F.3d 1172 (9th Cir.2000)(finding that plaintiffs asserting environmental and aesthetic interests in public lands had standing to challenge an anticipated land exchange under the Federal Land Policy and Management Act, even before the exchange occurred). The Colorado Supreme Court has also recognized aesthetic and ecological interests as sufficient to for standing purposes. *See Greenwood Village v. Petitioners for Proposed City of Centennial, supra.*

Further, the United States Supreme Court recently explained the "legally protected interest" prong of the standing requirement: "The proper inquiry is simply 'whether the interest sought to be protected by the complainant is *arguably* within the zone of interests to be protected ... by the statute.' " *National Credit Union Administration v. First National Bank & Trust Co.,* 522 U.S. 479, 492, 118 S.Ct. 927, 935, 140 L.Ed.2d 1 (1998)(quoting *Ass'n of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)). Unnecessary or premature decisions of constitutional questions should be avoided, and parties actually protected by a statute or constitutional provision are generally best situated to vindicate their own rights. *See Greenwood Village v. Petitioners for Proposed City of Centennial, supra.*

 Here, the primary plaintiff is a nonprofit corporation organized to preserve and enhance the park and protect the interests of its neighbors. The individual plaintiffs are owners of property adjoining the park. Plaintiffs have alleged that if the county allows a road to go through the subject property partly on the easement, the road would adversely affect the aesthetics of the park and erode the property values of adjoining landowners. The interests that plaintiffs seek to protect are sufficient to establish an injury in fact. *See Greenwood Village v. Petitioners for Proposed City of Centennial, supra.*

Cases cited by developer on the standing issue are inapposite. For example, *Title Guaranty Co. v. Harmer,* 163 Colo. 278, 430 P.2d 78 (1967), holding that a party cannot assert rights to an easement created by an instrument to which it is a stranger, does not apply here because the easement at issue in this case is on public, not private, land. Where, as here, the land is public, an organization whose members have, or individuals who have, rights to be on the land and use the land may bring a suit if those protected rights are in jeopardy. *See Desert Citizens Against Pollution v. Bisson, supra.*

Moreover, *Brotman v. East Lake Creek Ranch, L.L.P.,* 31 P.3d 886 (Colo.2001), is distinguishable. In *Brotman,* the supreme court concluded that the plaintiff did not have an imminent injury in fact because he sought to enjoin the performance of an agreement between a landowner and the agency that *might* create an interference with the land. Here, the construction of the road through the subject property would harm plaintiffs' aesthetic, ecological, and property interests. This direct injury satisfies the standing requirement.

Accordingly, the trial court did not err in concluding that plaintiffs have standing to challenge the validity of the road easement.

## III.

Developer next contends that the trial court erred when it concluded that there is no road easement. We disagree.

We review the district court's order granting plaintiffs' motion for summary judgment de novo. *See Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). Summary judgment is appropriate when there is no doubt concerning material facts. *See Roderick v. City of Colorado Springs,* 193 Colo. 104, 563 P.2d 3 (1977). All doubts as to the existence of an issue of material fact must be resolved against the moving party. *See Ridgeway v. Kiowa School District C–2,* 794 P.2d 1020 (Colo.App.1989).

### A.

Developer first argues that plaintiffs are precluded from arguing that an easement does not exist because the county, as owner of the subject property, admitted its existence. In addition, based on the county's admission, developer argues that it has an easement by estoppel. We disagree.

The county admitted the existence of the road easement in response to developer's requests for admissions. Developer argues that because the county's admissions may provide the trial court with evidence for summary judgment and the county did not respond to developer's motion for summary judgment, the county did not meet its burden of proof. *See* C.R.C.P. 56(e) (if there is no response to opposing party's affidavits, then summary judgment, if appropriate, shall be entered). Thus, according to developer, the trial court should have granted its motion for summary judgment, and plaintiffs are estopped from asserting that an easement does not exist.

Developer is arguing that it and the county are opposing parties and the county's admission is controlling against plaintiffs, a third party. Although C.R.C.P. 36(b) regarding admissions states that "[a]ny matter admitted under this Rule is conclusively established," we find persuasive the reasoning interpreting the corresponding federal rule that precludes the application of such "admissions" to a third party. The federal approach avoids the danger of collusion between parties and allows the third party a proper adjudication on the merits. *See Kittrick v. GAF Corp.,* 125 F.R.D. 103 (M.D.Pa. 1989); *see also* C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure* § 2264, at 741 (1970)("Admissions obtained under Rule 36 may be offered in evidence at the trial of the action, but they are subject to all pertinent objections to admissibility that may be interposed at trial.... It is only when the admission is offered against the party who made it that it comes within the exception to the hearsay rule for admissions of a party opponent.").

Here, both the county and developer favor the construction of the road and seek the same result. When the court suggested that developer might not have standing to assert an argument, the county initially asserted the developer's argument. Thus, the reason for the above noted interpretation of the federal rule—to prevent collusion between parties—clearly applies here.

Moreover, an admission must be offered against the party who made it. CRE 801. Here, the county's "admission" that an easement exists is not against its interests. It rezoned developer's property, approved the extension and construction of the road, and asserts arguments supportive of developer and in favor of the road.

Further, an easement was not created by estoppel. A court can imply an easement created by estoppel when:

1) [T]he owner of the servient estate "permitted another to use that land under circumstances in which it was reasonable to

foresee that the user would substantially change position believing that the permission would not be revoked," 2) the user substantially changed position in reasonable reliance on that belief, and 3) injustice can be avoided only by establishment of a servitude. Whether reliance is justified depends upon the nature of the transaction, including the sophistication of the parties.

*Lobato v. Taylor*, 71 P.3d 938, 2002 WL 1360432 (Colo. No. 00SC527, June 24, 2002) (citation omitted; quoting Restatement (Third) of Property: Servitudes § 2.10 (1998)).

■ Developer argues that it reasonably relied on the county's admissions and statements concerning the existence of the road easement and its actual use when it planned its development. However, we conclude that developer's reliance was, as a matter of law, unreasonable.

In our view, the county cannot convey its property, or any interest therein, by admissions made by the county attorney in litigation. That is, assuming for purposes of discussion that the right of way on the subject property did not previously exist, the county's response to requests for admissions through its attorney cannot create an adverse interest in county-owned property. Nor, we conclude, can a letter sent from the county's park planner to the USFS, which requests permission to relocate an entrance road and refers to the road easement, grant such an easement or convey or create an interest in county-owned property. *See* §§ 30–11–101 to –103, C.R.S.2002; *see also Martini v. Smith*, 18 P.3d 776 (Colo.App. 2000), *aff'd*, 42 P.3d 629 (Colo.2002).

Nor, in our view, does the acquiescence, if any, of the county in the slight and occasional encroachments onto the road easement by the road serving the Section 11 residents create an easement by estoppel as to the entire road easement.

### B.

Developer also contends that the trial court erred when it concluded that the road easement was not granted by the 1921 deed. We disagree.

■ "An easement is a right conferred by grant, prescription, or necessity authorizing one to do or maintain something on the land of another . . . ." *Freeman v. Rost Family Trust*, 973 P.2d 1281, 1284 (Colo.App.1999). An easement may be created by reservation in a deed conveying the servient or burdened property to another. *See Hornsilver Circle, Ltd. v. Trope*, 904 P.2d 1353 (Colo.App.1995). The existence and extent of an expressly created easement are "determined by interpreting the conveyance instrument." *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1235 (Colo. 1998).

Developer argues that the county acquired the subject property burdened by the road easement. It is undisputed that no road easement existed prior to the 1921 deed.

The 1921 deed, which conveyed section 11, stated that the "conveyance is made *subject to* a right of way over and across a strip of land thirty (30) feet wide on *each side of each section line* " (emphasis added).

Initially, we note that this language does not constitute a dedication of an easement to the public. *See* 7 *Thompson on Real Property* § 6.03(a)(3) (David Thomas ed.2001); 1 Restatement (Third) of Property: Servitudes § 2.18 (2000). In addition, we note that, historically, the reservation or dedication of easements in a deed in favor of third parties was prohibited. *See Michael J. Uhes, Ph.D., P.C. v. Blake*, 892 P.2d 439 (Colo.App.1995).

■ The deed does not grant an interest in, nor does it indicate that the grantor owned or had an interest in, Section 12, which contains the subject property. Thus, it is not clear from the 1921 deed alone that the lumber company intended or had the authority to encumber Section 12. We cannot determine from the face of the 1921 deed that the lumber company intended to grant the road easement, as it is elementary that it may only grant an easement in or over property which it owns. *Burt v. Rocky Mountain Fuel Co.*, 71 Colo. 205, 205 P. 741 (1922).

Maintaining the integrity of the title supports our conclusion:

The recording act presents a problem where the conveyance of property from A to B contains a grant of an easement to B over land retained by A. In a technical sense, the deed from A to B does not form a part of the direct chain of title to the land retained by A. Many courts have held that a bona fide purchaser is not bound by recorded covenants and restrictions if the same are not found in the direct chain of title. If this rule were applied by analogy to easements, a subsequent bona fide purchaser of the retained parcel in the example above would not have constructive notice of the easement which only appears as part to the conveyance of the dominant estate from A to B.

4 Powell on Real Property § 34.03, at 34–22 (Powell–Rohan ed.2000). Finally, the 1932 deed conveying the subject property is likewise insufficient to grant the road easement. The conveyance in the 1932 deed was "subject to right of way for road purposes along section lines" and does not contain any words of reservation minimally necessary to reserve an easement.

The phrase "subject to" denotes a previously existing interest, not the creation of a new one. We have already concluded that the 1921 deed did not grant the road easement. Our research has disclosed only two cases that hold, or appear to hold, that the phrase "subject to" is sufficient to create an easement. In both instances, unlike here, the roadway had been constructed on the servient estate and used for access to the dominant estates at the time of the grant or reservation. Behm v. Saeli, 560 So.2d 431 (Fla.Dist.Ct.App.1990) ("subject to" is sufficient to create a roadway easement for a road already constructed and used for access to dominant estate); Heigert v. Londell Manor, Inc., 834 S.W.2d 858 (Mo.Ct.App. 1992). While the requirement of technical language in creating easements has diminished, we conclude that "subject to," standing alone, is not sufficient to reserve an easement.

Accordingly, we conclude that the trial court did not err when it concluded that the road easement was not granted.

## IV.

Developer next contends that the trial court erred in finding that the Sisk Act's restrictions are applicable to the park property. We disagree.

The Sisk Act, permits the federal government to exchange land with local governments for land or cash, provided that the lands transferred "may be used only for the purposes for which they were being used prior to conveyance." The Act only applies to conveyances of eighty acres or less.

Developer argues that because there was uncontroverted evidence that, based upon a recent survey submitted by developer, the subject property consists of 80.5 acres, the restrictions of the Sisk Act do not apply to it. We are not persuaded.

It is undisputed that the exchange deed by which the county acquired the park was authorized by and granted in accordance with the Sisk Act. A United States government survey, which was approved by the Surveyor General's office in 1866, indicates that Section 12, which contains the subject property, consists of 640 acres, and by aliquot description, the park property contains 80 acres.

It is well established that a survey made by the officers of the United States and confirmed by the land department is not open to challenge by any collateral attack in the courts. Russell v. Maxwell Land–Grant Co., 158 U.S. 253, 15 S.Ct. 827, 39 L.Ed. 971 (1895); Colorado Fuel Co. v. Maxwell Land–Grant Co., 22 Colo. 71, 43 P. 556 (1896). Moreover, government surveys are conclusive as to the land conveyed between the government and private parties. Pueblo of Santa Ana v. Baca, 844 F.2d 708 (10th Cir. 1988). Furthermore, the fact that a modern survey may be more accurate than the original government survey "cannot defeat ownership rights flowing from the original grant and the boundaries originally marked off." United States v. Doyle, 468 F.2d 633, 636 (10th Cir.1972).

Here, the 1866 survey is conclusive, and it is immaterial that a modern measurement indicates that the park consists of 80.5 acres.

In addition, 43 U.S.C. § 752 provides a method for determining the corners, boundaries, and area of public land sections, half sections, and quarter sections, including:

> Each section or subdivision of section, the contents whereof have been returned by the [Surveyor General], shall be held and considered as containing the exact quantity expressed in such return; and the half sections and quarter sections, the contents whereof shall not have been thus returned, shall be held and considered as containing the one-half or the one-fourth part, respectively, of the returned contents of the section of which they may make part.

The original survey of Section 12 that was approved by the Surveyor General found Section 12 to consist of 640 acres. Pursuant to § 752, a quarter section would then equal 160 acres, and half a quarter section, like the subject property, would equal 80 acres.

Finally, we agree with the trial court that there is an inherent dichotomy in developer's argument that the Sisk Act does not apply. On the one hand, if the Sisk Act does not apply because the transfer was too large, then the conveyance to the county was void or is voidable, and the county could not grant permission to developer to construct a road. On the other hand, if the county has the legal power to grant permission to build a road, it must have title to the subject property, which it acquired pursuant to, and subject to the limitations contained in, the Sisk Act.

Accordingly, we conclude that the trial court did not err in concluding that the Sisk Act's restrictions apply to the park.

## V.

We next address developer's argument that the trial court erred in ruling upon the provisions of the Sisk Act without joining USFS as an indispensable party. We disagree.

■ Whether a party is indispensable and must be joined is a mixed question of law and fact and must be determined on the facts of each case. *Balkind v. Telluride Mountain Title Co.,* 8 P.3d 581 (Colo.App.2000). C.R.C.P. 19(a) states:

> A person who is properly subject to service of process in the action shall be joined as a party in the action if: (1) In his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (A) As a practical matter impair or impede his ability to protect that interest....

■ Not every person who has an interest in issues raised in a particular civil action must be joined as a party to that action. If the interests of the parties before the court may be finally adjudicated without adversely affecting the rights of an absent person, the absent party need not be joined. Rather, "only if 'an absent person's interest in the subject matter of the litigation is such that no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the right of such absent person' is the absent person considered indispensable." *Brody v. Bock,* 897 P.2d 769, 778 (Colo.1995)(quoting *Woodco v. Lindahl,* 152 Colo. 49, 54, 380 P.2d 234, 238 (1963)).

Here, developer limits its argument to the issue of the Sisk Act, not the easements, and does not argue that it would be subject to multiple litigation or conflicting orders.

As previously discussed, developer argued that the Sisk Act's restrictions do not apply here because the property is 80.5 acres. In response, plaintiffs argued that if the Act does not apply, the conveyance to the county is void, and they requested remedies of rescission and reformation of the deed. Developer then argued that USFS would be an indispensable party if the trial court sought to rescind or reform the deed.

■ We agree with developer that if plaintiffs had sought rescission or reformation, USFS might well be an indispensable party because its interests would be directly affected. However, the trial court, in denying the motion, stated that it would not entertain claims of recission or reformation, and thus, USFS was not an indispensable party.

As required under C.R.C.P. 19(a), complete relief can be accorded to all parties joined in this litigation. The court may determine whether an easement exists and whether uses of the property comply with the Act without affecting USFS's interests. In addition, limiting the remedies here does not impede USFS's ability to protect its own interests in subsequent proceedings if it so desires.

Moreover, unlike in the cases cited by developer, the Sisk Act does not require USFS to enforce the restrictions imposed by the statute, see Sellas v. Kirk, 200 F.2d 217 (9th Cir.1952), or approve any future uses of the park, see Barnes v. United States, 205 F.Supp. 97 (D.Mont.1962).

Accordingly, we conclude, as did the trial court, that USFS was not an indispensable party in this case as it is postured.

## VI.

Finally, we reject the county's argument that the trial court erred in finding that the Sisk Act limitation bars the proposed road extension.

Lands transferred under the Sisk Act "may be used only for the purposes for which they were being used prior to conveyance." 16 U.S.C. § 484a.

The application of particular facts to a statute involves a mixed question of fact and law. Thus, we will review the trial court's findings of fact for a clear error and review the application of the facts to the statute de novo. See Medina v. State, 35 P.3d 443 (Colo.2001); Robles v. People, 811 P.2d 804 (Colo.1991).

In the 1970s, the county used the subject property as a regional park under a special use permit granted by the USFS "for the purpose of: providing a park and recreation area to serve the needs in the Black Forest area and general public consisting of: (A) restroom [including] flush toilets; (B) group picnic shelter; (C) family picnic area; (D) tennis courts; (E) volleyball court; (F) multipurpose court; (G) play field; (H) road and parking area; [and] (I) five acre storage and maintenance area for county highway department."

In 1999, USFS transferred the property to the county pursuant to an exchange deed that recited the Sisk Act limitations and stated that the county "agrees and covenants that the above-described land will be used for local governmental purposes in perpetuity."

We reject the county's argument that the park thus may be used for any "local governmental purposes." Where the language of a statute is clear and unambiguous, the court must interpret the statute to effect the unambiguous intent of Congress. Mount Emmons Mining Co. v. Babbitt, 117 F.3d 1167 (10th Cir.1997); see also City of Boulder v. Colorado Public Utilities Comm'n, 996 P.2d 1270 (Colo.2000).

Here, the statute is clear that the property may only be used for those purposes for which it was being used prior to the conveyance. We further conclude that this language clearly means the actual use to which the property was put prior to the conveyance, not the permitted uses. The adding of additional language in the deed—"local governmental purposes"—has no basis in the statute and cannot expand the authorized uses. See American Airlines, Inc. v. Austin, 75 F.3d 1535 (Fed.Cir.1996)(a provision in a government contract that violates or conflicts with a federal statute is invalid or void).

Therefore, we conclude that the uses to which the subject property may be put are limited to those uses in existence at the time of the conveyance.

Developer presented evidence that an extension of the road would provide benefits for the park, including: (1) improved access for park users; (2) improved capability to fight forest fires; (3) improved capability to deal with mistletoe problems; and (4) access to an additional 280 acres that developer would donate to the park. While these uses may be legitimate, we agree with the trial court that they are secondary to the road's primary purpose—access to developer's new housing development.

Accordingly, we conclude that the trial court did not err in finding that the extension of the road violates the Sisk Act.

The judgment is affirmed.

Judge DAVIDSON and Judge WEBB concur.